O

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **SARA ALICIA B. TRAUTMANN; SABT** | § | |
| **RANCH LTD.,** *et. al.*, | § | |
| *Plaintiffs,* | § | |
| | § | **CIVIL ACTION NO.  L-04-117** |
| **v.** | § | |
| | § | |
| **COGEMA MINING, INC.; MALAPAI** | § | |
| **RESOURCES CO.; MALCO; AND** | § | |
| **TOTAL CORP.,** | § | |
| *Defendants.* | § | |

## OPINION & ORDER

Pending before the Court is Defendant Cogema Mining, Inc.'s Motion for Summary Judgment as to all of Plaintiffs' claims.[1] [Doc. No. 38]. After due consideration of the pleadings, the record, and the governing law, the Court DENIES IN PART and GRANTS IN PART Defendant's Motion.

## I.    PROCEDURAL BACKGROUND AND RELEVANT FACTS

This dispute arises out of Defendant's uranium mining activity on land owned by Plaintiffs in Webb and Duval Counties, Texas—acreage hereafter referred to as "El Mesquite." [Doc. No. 87-1 at 10]. Plaintiff Sara Trautmann is the successor in interest and current owner of the El Mesquite mineral estate. [Doc. No. 87 at 46]. Plaintiff SABT Ranch is the owner of the El

---

[1] Cogema Mining owns Defendant Total, and MALCO is actually an entity comprised of both Cogema and Malapai under a joint participation agreement. [Doc. No. 39-1, ¶ 2]. Therefore, although more than one defendant is listed in the above style, for all practical purposes, especially for the purposes of this opinion, the defendant in this case is Cogema Mining. Unsurprisingly, then, only Cogema has filed for summary judgment, but has done so on behalf of all Defendants. [Doc. No. 39-1]. The Court will throughout refer to Defendants collectively in the singular form as "Cogema."

Mesquite surface estate.[2] [Doc. No. 87 at 46]. In 1981, Defendant Cogema Mining succeeded

Mobil Oil Corporation as lessee of the El Mesquite mineral estate. [Doc. No. 87-1 at 10]. Stated

generally, under the terms of the original lease agreement (hereafter "Lease,") Defendant was

granted the right to explore, mine, and extract from the property all minerals, primarily uranium.

[Doc. No. 87-1 at 12]. In addition to the original Lease, the parties entered into several

subsequent agreements—primarily amendments to the original Lease—that are central to this

litigation, and which are discussed in greater detail below as required. [Doc. No. 87-1 at 12-13].

    To extract the valuable uranium from the underground aquifer in which it is naturally

deposited, Cogema engaged in a form of mining called "in-situ leaching," by which various

chemicals in liquid form, many of them toxic, are injected into the production aquifer in order to

separate the uranium molecules from other undesired substances. [Joe Zupan Dep. 100-01, Doc.

No. 39-1, Jan. 5, 2005]; [*see also* Kreitler Aff., Ex. C]. After the uranium is brought to the

surface, the chemicals originally injected into the aquifer to facilitate production are separated

from the uranium and injected back down into the aquifer as waste. [Kreitler Aff., Ex. C]. This

process naturally leads to an increase in the concentration of contaminants, such as selenium, in

the production aquifer. *Id.* This contamination is usually remedied via a restoration process after

the production aquifer is depleted of uranium. *Id.* This litigation arises out of Cogema's alleged

failure to adequately restore both the underground aquifer and soil quality on Plaintiffs' property

upon termination of its uranium production efforts.

    On July 26, 2004, Plaintiffs filed suit in the 341st Judicial District Court, Webb County,

Texas, and Defendant thereafter removed the cause to federal court pursuant to 28 U.S.C. §

---

[2] On December 15, 2005, Plaintiffs Patricia Benavides; Arturo Benavides; Los Angeles Cattle Co.; and Los Angeles
Minerals, Ltd., filed their Motion to Intervene, [Doc. No. 48], which the Magistrate Judge granted on March, 30,
2006. [Doc. No. 57]. However, since Cogema filed separately for summary judgment against Intervenors, the
Court's reference to "Plaintiffs" in this opinion refers only to the original Plaintiffs, Sara Trautmann and SABT
Ranch.

1441. [Doc. No. 1 at 7]. Plaintiffs seek a decree from this Court declaring: (1) the "rights and duties, both express and implied, to which Defendants are bound in . . . restoring" the soil and aquifer water quality of the El Mesquite property, [Doc. No. 87 at 18]; (2) that Defendants have performed its mining operations negligently, causing the El Mesquite soil to become contaminated, [Doc. No. 87 87 at 19]; (3) that Defendants are liable for trespass by way of their continued failure to remove "trash, debris, [and] contaminants" from their property, [Doc. No. 87 at 19]; and (4) that Defendants are liable for fraud by falsely representing to Plaintiffs that the El Mesquite soil and aquifer water quality would be returned to pre-mining conditions when, in fact, Defendant's intentions were otherwise.[3] [Doc. No. 87 at 19].

On September 6, 2005, Defendant filed its Motion for Summary Judgment, and brief in support thereof. [Doc. Nos. 38, 39]. Plaintiffs filed their response to Defendant's Motion on September 20, 2005. [Doc. No. 41].

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263 (1986). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Id.* at 261. The Court reviews the record by drawing all inferences

---

[3]  Plaintiffs also seek a variety of enforcement mechanisms and remedies, such as an injunction and the awarding of monetary damages. [Doc. No. 74, throughout]. However, although both parties, especially Plaintiffs, refer to these demands as "claims" or "causes of action," the Court conceives of them as remedies. Therefore, the Court does not consider the sufficiency of these demands in applying the relevant summary judgment analysis to Plaintiffs true causes of action.

most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Assuming no genuine issue exists as to the material facts, the Court will then decide whether the moving party shall prevail solely as a matter of law. *Id.* The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.    DECLARATORY JUDGMENT STANDARD

Plaintiffs bring this suit under the Federal Declaratory Judgment Act, codified as 28 U.S.C. § 2201, asking the Court do declare the rights and duties of both parties under the relevant parts of the Uranium Lease, as well as to declare the amount of damages Defendant owes Plaintiffs for the purposes of restoring the surface, subsurface, and aquifer water quality to pre-mining conditions. [Doc. No. 87 at 20]. Section 2201, in relevant part, provides:

> [i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Courts have made clear that the declaratory judgment "procedure is remedial and is to be liberally construed to achieve its wholesome and salutary purpose." *Allstate Ins. Co. v Employers Liability Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971). Therefore, although the general purpose of declaratory judgment proceedings is to "provid[e] [a] speedy and inexpensive method

of adjudicating legal disputes without invoking coercive remedies," *Sherwood Medical Industries, Inc. v. Deknatel, Inc.*, 512 F.2d 724, 729 (8th Cir. 1975), district courts are empowered, via 28 U.S.C. § 2202, to grant "[f]urther necessary or proper relief based on a declaratory judgment . . . against any adverse party whose rights have been determined by such judgment." Although "[i]t is not the primary function of the court in a declaratory judgment proceeding to award damages, . . . the grant of power . . . is broad enough to vest the court with jurisdiction to award damages where it is necessary or proper to effectuate relief based upon the declaratory judgment . . . ." *Security Ins. Co. v. White*, 236 F.2d 215, 220 (10th Cir. 1956); *see also Fred Ahlert Music Corp. v. Warner/Chappell Music*, 155 F.3d 17, 25 (2d Cir. 1998) (stating that a district court may award damages "whether or not it had been demanded, or even proved, in the original action for declaratory relief"); *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988) (rejecting the argument that the granting of a money judgment was inappropriate after rendition of a declaratory judgment); *Hudson v. Hardy*, 424 F.2d 854, 855 (D.C. Cir. 1970) ("[M]oney damages may, of course, be awarded in an action for declaratory judgment").

Because the Court, should it see fit to do so, may grant Plaintiffs their requested relief by way of a declaratory judgment, the question before the Court is whether each of Plaintiffs' claims can withstand the summary judgment analysis discussed above.

## IV.    DISCUSSION

### A.  Declaration of Rights and Duties—Construction of the Lease

Plaintiffs claim that Cogema has breached the terms of the Lease agreement, which allegedly requires Cogema to reduce the contaminants in the production aquifer to pre-mining levels.

[Doc. No. 87 at 11-20]. The issue of breach is discussed separately below. However, because the Court must first settle any disputes over the meaning of key contract provisions before adjudicating Plaintiffs' breach of contract claim, Plaintiffs seek a declaratory judgment from this Court establishing the rights and duties of both parties under the Lease. Paragraph 6(e) of the 1977 Amendment to the Lease provides that in the event Cogema's mining activity . . . :

> . . . results in . . . damage to or destruction of any . . . *water supplies*, the Lessee shall *repair*, *restore*, and *replace* any well, tank, reservoir, or other water facility so damaged or destroyed, with reasonable diligence and dispatch, if feasible in opinion [sic] of Lessee, *or if not so feasible*, *then Lessee shall pay such amount of money as will reasonably compensate Lessor for any such damage so sustained* . . . .

[Ex. H, ¶ 6(e)] (emphasis added).

In their Motion for Summary Judgment, Defendants do not argue that there is no jusiticiable issue as to the rights and duties of Defendants under ¶ 6(e). Indeed Cogema admits that the provision requires it to restore the production aquifer to its pre-mining condition if that aquifer in fact qualifies as a "water supply." [Donna Wichers Dep., Ex. K, April 26, 2005 at 19-20]. Cogema apparently contends that the production aquifer should not so qualify, [Wichers Dep., Ex. K at 96, 97-100], and Plaintiffs naturally disagree.

Of course, under Texas contract law, an interpretive dispute does not arise merely by virtue of each party advancing distinct interpretations; rather, both interpretations must also be reasonable. *Lopez v. Munoz, Hockema & Reed, LLP.*, 22 S.W.3d 857, 861 (Tex. 2000); *see also Harris v. Parker College of Chiropractic*, 286 F.3d 790, 793 (5th Cir. 2002) ("In diversity cases, federal courts apply state law rules of contract construction"). Here, both parties' apparent interpretations of ¶ 6(e) are reasonable. On the one hand, the phrase "water supply" plainly appears to mean just that—supplies of water in a general sense, which would include the aquifer at issue. On the other hand, the language following the phrase "water supply" possibly limits the

corresponding restoration obligation only to man made facilities. Whatever may be the correct construction, it is clear that a justiciable controversy now exists regarding the meaning of ¶ 6(e), and the parties' corresponding rights and duties.[4]

## B.  Breach of Contract

Plaintiffs claim that Cogema is in breach of the Lease, which allegedly requires Cogema to reduce the contaminants in the production aquifer to pre-mining levels. [Doc. No. 87 at 11-20]. In Texas, in order to recover for breach of contract, a plaintiff must show: (1) the existence of a valid enforceable contract; (2) that the plaintiff and the defendant are in privity with one another; (3) that the defendant breached the contract; and (4) that the defendant's breach caused the plaintiff injury. *Lewis v. Bank of America*, 343 F.3d 540, 544-45 (5th Cir. 2003). As explained above, the Court must first establish the parties' respective rights and obligations under the Lease as a preliminary step to adjudicating Plaintiffs' breach of contract claim. Of course, the Court cannot today appropriately settle the parties' semantics dispute. However, since there is a genuine dispute as to the meaning of the phrase, the Court finds it most appropriate to adopt Plaintiffs' interpretation of the contract for the limited purpose of determining whether their separate breach of contract claim can survive summary judgment. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (providing that courts should review the record by drawing all inferences most favorable to the party opposing the summary judgment); *see also Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) ("Where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used").

---

[4] Although it is readily apparent from the depositions and other filings that both parties read ¶ 6(e) differently, neither party has hereto urged *the Court* to adopt a particular construction. Therefore, the Court equates the parties' relative silence on the matter with a desire to postpone conclusive construction of ¶ 6(e) until later proceedings.

First, the Court does not doubt that the Lease between Cogema and Plaintiffs constitutes a valid and enforceable contract, and that the parties are in privity with one another by way of that contract. Therefore, the dispositive issue is whether there is a genuine issue of material fact regarding whether Cogema breached that contract, and whether such breach caused Plaintiffs' injury.

Assuming that the production aquifer qualifies as a "water supply," Plaintiffs have easily met their burden of showing the existence of a genuine issue regarding breach. In a letter to the Texas Department of Health, dated November 13, 1980, and prepared by Mobil Oil Corp., Cogema's predecessor in interest, Mobil states clearly that the groundwater quality of the production aquifer was at the time "variable" but "in general above drinking water standards," and that "it is the only source of drinking water for the area." [Ex. A-3 at 51]. However, currently, Cogema admits that it will not reduce the contaminants in the production aquifer to pre-mining levels. [Wichers Dep., Ex. K-L at 105]. Cogema, hastily points out that the production aquifer is "exempt" by the State of Texas, a designation that allows an operator to inject chemical solutions into a potable water aquifer for the purposes of in-situ leaching. [Kreitler Aff., ¶ 7]. However, this assertion actually reinforces Plaintiffs' argument that the production aquifer water is no longer fit for human consumption, since, as Cogema itself has stated, an "exempt" aquifer is one which by definition may no longer be tapped as a source of potable water. [Wichers Dep., Ex. K at 15]; *see also* [Bonifas Dep., Ex. M at 132-33 (Cogema employee Bernard Bonifas admitting that selenium level in the production aquifer is eight times higher than the pre-mining level)].

The injury to Plaintiffs is evidenced by Plaintiff Sarah Trautmann's sworn statement that her family and the land's previous occupants have used the aquifer as a source of drinking water. [Sarah Trautmann Dep., Ex. F at 2, 8]. Indeed, Cogema admits that it has no evidence to dispute

8

Plaintiffs' sworn statements to the effect that the aquifers have historically been used as a source of water by occupants of the property. [Wichers Dep., Ex. K-L at 96-100]; *see also* [Kreitler Aff., Ex. C, ¶ 11 ("The loss of any ground water resource on a ranch in arid South Texas will diminish its value for ranching, hunting or ecotourism, and will clearly impact the ongoing ranching and wildlife operations")]. Lastly, causation is satisfied per Cogema's admission, through its representative Bernard Bonifas, that the increased concentration is a direct result of its mining activity. [Bonifas Dep., Ex. M at 136-37].

Therefore, the Court concludes that a genuine issue for trail exists as to each element of Plaintiffs' breach of contract claim and, accordingly, Defendant is DENIED summary judgment as to this claim.

### C.  Negligence

Plaintiffs also claim that Cogema is liable for negligence in contaminating the El Mesquite soil and aquifer water. [Doc. No. 74 at 13]. Under Texas law, a plaintiff claiming negligence must show: (1) that the defendant owed the plaintiff a specific duty; (2) that the defendant breached that duty; (3) that the plaintiff suffered an injury; and (4) causation—that the plaintiff's injury was a result of the defendant's breach. *Anthony v. Chevron, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002).

First, the Court finds it difficult to take seriously Cogema's claim that it did not owe a duty of care to Plaintiffs. *See* [Doc. No. 39-1]. "From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved." *Robert R. Walker, Inc. v. Burgdorf*, 244 S.W.2d 506, 509 (Tex. 1952). Since uranium is highly radioactive, it no doubt qualifies as a "dangerous commodity." Indeed, under Texas law, there

exists in every oil and gas lease an implied covenant to "operate with reasonable care."[5] *Amoco Prod. Co. v. Alexander,* 622 S.W.2d 563, 567-68 (Tex. 1981). Therefore, "[e]very claim of improper operation by a lessor against a lessee should be tested against the general duty of the lessee to conduct operations as a reasonably prudent operator . . . ." *Id.* at 568. Accordingly, the Court has little doubt that Cogema owed some duty of care to Plaintiffs—that of a "reasonably prudent operator."[6]

The Court also finds that there is a genuine dispute as to whether Defendant breached its duty of care to Plaintiffs, as well as whether Plaintiffs suffered injury as a result. In their brief in opposition to summary judgment, Plaintiffs provided documents evidencing numerous spills of thousands of gallons of "barren lixiviant" on Plaintiffs' Property, a highly contaminated solution used in the in-situ leach process. *See, e.g.,* [Ex. A-6]. Further, Plaintiffs have provided the Court with documents from the U.S. Nuclear Regulatory Commission showing that at least one of the spills was the result of Cogema's improper use of a 90-degree "tee" in the pipe line used to transport barren lixiviant to and from Cogema's on-site plant to the various El Mesquite wells. [Ex. A-2 at 2].

Also included is documentary evidence of "excursions," defined by an expert as "events in which unacceptably high concentrations of toxic constituents are detected in . . . monitoring wells, indicating that toxic constituents are mobile and no longer under the operator's control."

---

[5] The Court applies principles of oil and gas law, as oil and gas leases generally relate to a "mineral estate," and, as one Texas court has put it, "uranium compounds as found in nature constitute minerals scientifically, geologically, and practically, [and thus] they are minerals which are conveyed or reserved in deeds or leases which purport to grant or reserve oil, gas, and other minerals." *Crews v. Plainsman Trading Co.*, 827 S.W.2d 455, 460 (Tex. App.—San Antonio 1992, writ denied).

[6] Thus, Plaintiffs' negligence claim as it pertains to the aquifer water quality is not precluded by their breach of contract claim, which centers on the same allegedly injurious events. *See Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (1991) (Stating that "[i]f the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort."). Cogema's obligation to mine as a "reasonably prudent operator" is a duty imposed by law, completely distinct from that imposed by way of the Lease.

[Zupan Aff., Ex. A at 9]. According to the Director of the Waste Management Division of the Office of Nuclear Material Safety and Safeguards, such excursions are "generally preventable since they are often manifested by structural weaknesses induced by *improper well construction*." [Ex. A-2 at 2] (emphasis added). The Director further found that "licensees should avoid piping configurations similar to the 90-degree bend" employed by Cogema. [Ex. A-2 at 2]. This, in turn, may explain the numerous "hot spots," defined as areas of soil contamination, which Cogema admits exist on Plaintiffs' Property.[7] [Wichers Dep., Ex. K at 33].

The above is a non-exhaustive recitation of the evidence provided in Plaintiffs' numerous and lengthy depositions, and accompanying exhibits. Plaintiffs have presented sufficient evidence to show that there is a genuine issue of material fact as to all elements of their claim of common law negligence. Therefore, the Court DENIES summary judgment as to Plaintiffs' negligence claim.

### D. Trespass

Plaintiffs allege that Cogema is liable for trespass due to its failure to complete demolition of its on-site facilities and remove trash and debris from the El Mesquite property "within a reasonable length of time." [Doc. No. 74 at 6, 12]. In Texas, in order to prove trespass, it must be shown that: (1) the plaintiff owned or had a lawful right to possess the land in question; (2) the defendant entered the land physically and intentionally; and (3) the defendant's entry caused injury to the plaintiff's right of possession. *Argonaut Sw. Ins. Co. v. Naupin* 500 S.W.2d 633, 635

---

[7] Plaintiffs plead the common law doctrine of negligence per se based on Cogema's numerous violations of state law while operating on Plaintiffs' property. *See* [David Sorrells Aff., Ex. D-6]. However, the Court treats negligence per se, as used by Plaintiffs, as an evidentiary tool that they invoke to satisfy the breach element of their negligence claim, rather than a wholly distinct cause of action. *Perry v. S.N.*, 973 S.W.2d 301, 306 (Tex. 1998) ("[T]he defendant in most negligence per se cases already owes the plaintiff a pre-existing common law duty to act as a reasonably prudent person, so that the statute's role [that is, the statute violated by the defendant,] is merely to define more precisely what conduct breaches that duty"); *see also Reeder v. Daniel*, 61 S.W.3d 359, 361-62 (Tex. 2001) ("[N]egligence per se is a common-law doctrine that allows courts to rely on a penal statute to define [the appropriate] standard of care").

(Tex. 1973). An example of trespass is when a defendant fails to remove objects from the plaintiff's property in violation of a duty to do so. *See*, *e.g.*, *Allen v. Virginia Hill Water Sup. Corp.*, 609 S.W.2d 633, 635 (Tex. App.—Tyler 1980, no pet.).

Plaintiffs obviously have a lawful right to posses the El Mesquite property—they own it. Additionally, there is no dispute that Cogema has not completed demolition of its facilities on Plaintiffs' property, and that Cogema's property remains on Plaintiffs' lands. The only question is whether the continued presence of Cogema's property on Plaintiffs' property is in violation of a corresponding duty of timely removal.

In 1981, the parties' predecessors in interest entered into a Surface Lease and Plant Site Agreement, which amended the parties' original Lease as it pertained to Defendant's use of the surface of Plaintiffs' land, but did not affect the original contractual provisions concerning the mineral estate. [Ex. J at 1]. The Surface Lease provided that Cogema could terminate the Surface Lease by providing written notice of termination "[one] year in advance of abandoning the premises." [Ex. J, ¶ 14]. The Surface Lease further provided that the "expiration of [the Surface] [L]ease shall likewise operate to terminate all easement rights of Lessee obtained" under the [Surface] Lease, [Ex. J, ¶ 11], and that "[u]pon termination of [the Surface Lease,] Lessee shall abandon the premises, and shall remove all equipment, machinery and surface pipelines installed hereunder." [Ex. J, ¶ 15]. In their response to Cogema's Motion for Summary Judgment, Plaintiffs have included in the record a letter from Cogema, dated November 13, 2003, notifying Plaintiffs of its decision to terminate the Surface Lease effective January 2005, and of Cogema's intention to complete demolition and clean-up during 2004. [Ex. R]. The above provision established a clear mandate that was arguably triggered upon Cogema's notice of termination, effective January 2005, and one that Cogema has arguably been in violation of for some time.

Given this evidence, the Court concludes that there is a genuine issue as to whether Cogema is in violation of its duty to remove its equipment from Plaintiffs' property, and whether Cogema is liable for interfering with Plaintiffs' right of possession by continuously entering the premises as if the easements Cogema enjoyed during the primary term of the Surface Lease were still in effect. Therefore, the Court DENIES Defendant summary judgment as to Plaintiffs' trespass claim.

### E.  Fraud

Plaintiffs further allege that Cogema is liable for common law fraud due to its "fraudulent misrepresentations . . . that Plaintiffs' [l]ands would be restored to pre-mining conditions when, in fact, Defendants were seeking administrative relief from the [TCEQ] to increase the amount of constituents and contaminants that would remain on Plaintiffs' [lands.]" [Doc. No. 87 at 4].

In order to prove common law fraud in Texas, a plaintiff must show: (1) that the defendant made a material representation; (2) that was false when made; (3) that the speaker knew it was false or asserted it with reckless disregard of whether it was true; (4) that the speaker intended that it be acted upon; (5) that the plaintiff acted in reliance; and (6) the plaintiff was injured as a result. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 (Tex. 2002).

Important to understanding Plaintiffs' fraud claim is the fact that Cogema's obligation to restore the aquifer water quality to its pre-mining condition is dual: not only was it arguably obliged to do so under its contract with Plaintiffs, but Cogema was also identically committed to the Texas Commission on Environmental Quality. *See* [Ex. 3 at 10-1, Cogema Mining's *Supplemental Data for Radioactive Material License Renewal*, January, 1995, where it acknowledged that "[p]rior to engaging in well field surface reclamation, groundwater quality must be restored to a condition that is consistent with pre-mining levels . . . ."]; [Ex. 4, Mobil Oil

13

Corp.'s proposal for a uranium in-situ leach permit for the El Mesquite property, sent to the Texas Water Quality Board, Attachment 1, March 24, 1977, where Cogema states that "it is understood that required restoration levels are undefined . . . except that restored ground water quality shall be "consistent with original conditions and that EPA interim drinking water standards . . . will be used in determining when restoration has been accomplished."]

Beginning in 1998, Cogema began seeking permission from the TCEQ to amend the standard established by the State governing restoration of the production aquifer, in order to leave higher levels of contaminants in the aquifer, notwithstanding Cogema's commitment under the Lease to Plaintiffs. [Ex. A-5]. Plaintiffs' advance evidence that at about the same time Cogema, through its representative Bernard Bonifas, repeatedly assured Plaintiffs that the Property would be restored to its pre-mining condition. *See* [Sarah Trautmann Aff., Ex. E]; [Steve Trautman Aff., Ex. F]. Plaintiffs rely on this contradiction to satisfy the first several elements of their fraud claim. However, even assuming that their evidence of misrepresentation can satisfy the first three elements of a feasible fraud claim, Plaintiffs cannot satisfy all of them.

Plaintiffs fail to advance evidence that they relied on Cogema's allegedly dishonest representations. The only "reliance" possibly alleged is that, in trusting Cogema's representations, Plaintiff's were not aware of Cogema's intent to breach the Lease. In other words, Cogema concealed the existence of a cause of action, and therefore Plaintiffs were not prompted to sue for breach of contract. This type of reliance sounds more in fraudulent *concealment*—a doctrine invoked by a plaintiff in order to avoid expiration of their claims under the relevant statute of limitations. *See In re Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir. 1991). The Court does not believe, however, that such suffices to satisfy the reliance prong of a

*substantive* fraud claim. *See Harrison v. Bass Enters. Prod. Co.*, 888 S.W.2d 532, 536 (Tex.

App.—Corpus Christi 1994, no pet.) ("fraudulent concealment is not a cause of action itself").

At most, Plaintiff can only demonstrate that a promise was made and that the promise was

later broken—*i.e.*, breach of contract, which is alleged separately. To be sure, injurious conduct

may give rise to breach of contract and tort liability simultaneously. *See Delanney* 809 S.W.2d at

495. However, such can only be the case when the acts complained of violate a duty imposed by

law as well as imposed by contract, rather than only the latter.[8] *See id.* (citing W. Keeton, D.

Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 92 (5th Ed. 1984), in

asserting that there can be simultaneous liability for misfeasance but "there is no tort liability for

nonfeasance, *i.e.*, for failing to do what one has promised to do in the absence of a duty to act

apart from the promise made").

Plaintiffs also highlight the conspicuous fact that, in attempting to justify to Texas regulatory

authorities its plan to leave higher levels of contaminants in the production aquifer, Cogema

recently asserted that the "E-7 well field pre-mining water quality did not qualify [the water] as

human or livestock drinking water." [Ex. D-11 at 3]. This statement is in stark contrast to the

pre-mining determination, made by Cogema's predecessor, that the groundwater quality of the

production aquifer was at the time "variable" but "in general above drinking water standards,"

and that "it is the only source of drinking water for the area." [Ex. A-3 at 51]. These inconsistent

statements may give rise to an action against Cogema by the State of Texas. This is not,

however, enough to enable Plaintiffs to successfully invoke federal jurisdiction to entertain their

---

[8] Plaintiffs suggest that Cogema was under a legal duty, as well as a contractual duty, to disclose to Plaintiffs its intention to restore the production aquifer to a standard lower than that specified in the lease, due to a "special relationship that required disclosure," and that Cogema's failure to do so sounds in tort. [Doc. No. 81-2, ¶ 103]. However, according to the Texas Supreme Court, "Texas law has never recognized a fiduciary relationship between a lessee and royalty owners." *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998).

fraud claim. As the Fifth Circuit has reiterated, "[i]f the plaintiff is not the party who sustained the concrete and particularized injury for which a remedy is sought, and is not the assignee or designated representative of the injured party, then it does not have standing" to bring suit. *Florida Dep't of Ins. v. Chase Bank of Tex. N.A.*, 274 F.3d 924, 929 (5th Cir. 2001) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (U.S. 1992)).

Accordingly, as to Plaintiffs' claim of fraud, Defendant's Motion for Summary Judgment is GRANTED.

### F.  Statutes of Limitations

Defendant Cogema Mining argues that, even if Plaintiffs have presented genuine issues of material fact as to each of its substantive claims, their suit is nevertheless time barred under the applicable statutes of limitations.[9] [Doc. No. 87 at 43]. In response, Plaintiffs assert two affirmative defenses to Defendants' invocation of the various statutes of limitations: the so-called "discovery rule" and "fraudulent concealment." [Doc. No. 74, ¶¶ 20, 21].

Of course, these two doctrines become relevant only if the Court concludes that Plaintiffs' claims have expired per a standard application of the statutes of limitations. The Court remains cognizant of the burdens each party bears at this stage in the litigation—since Cogema's invocation of the statute of limitations constitutes an affirmative defense, it bears the burden of showing specifically how Plaintiffs' claims are time barred. *See Missouri Pac. R.R. v. Harbison-Fischer Mfg. Co.*, 26 F.3d 531, 536 (5th Cir. 1994). Until then, the burden does not shift to Plaintiffs to demonstrate why their claims should not be time barred.

In its Motion for Summary Judgment, Cogema makes only the conclusory allegation that Plaintiffs' claims have expired. [Doc. No. 87 at 43]. Therefore, Cogema has failed to satisfy its

---

[9] In Texas, a claim for negligence and trespass must be brought no later than two years after the day the cause of action accrues. Tex. Civ. Prac & Rem. Code § 16.003. For breach of contract, the limitation is four years. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing Tex. Civ. Prac. & Rem. Code § 16.051).

initial burden of showing when Plaintiffs' causes of action accrued and, thus, how the various statues of limitations bar any of Plaintiffs' claims.

## V.      CONCLUSION

Defendant bears the burden of showing the absence of a genuine issue of material fact as to each of Plaintiffs' claims, as well as the burden of showing conclusively that those claims are barred by the respective statutes of limitations.

With regard to Plaintiffs' claim of common law fraud, Defendant has met its burden, and therefore the Court **GRANTS** summary judgment as to that claim. However, with respect to Plaintiffs' remaining claims of breach of contract, negligence, and trespass, as well as their suit for declaratory judgment, Defendant Cogema's Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED.

Done this 5th day of September, 2006, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**