O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| SARA ALICIA B. TRAUTMANN; SABT RANCH LTD., *et. al.*, | § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 5:04-cv-117 |
| v. | § § § | |
| COGEMA MINING, INC.; MALAPAI RESOURCES CO.; MALCO; AND TOTAL CORP., | § § § § § | |
| *Defendants*. | § | |

## **OPINION & ORDER**

Pending before the Court is Defendants' Motion for Reconsideration, [Dkt. No. 104], of this Court's Opinion & Order, [Dkt. No. 90], denying Defendants' Motion for Summary Judgment, [Dkt. No. 38], as to Plaintiffs' claims of breach of contract, negligence and trespass. Upon due consideration of the filings and governing law, the Court DENIES Defendants' Motion.

### I.   PROCEDURAL BACKGROUND AND RELEVANT FACTS

Because disposition of the instant matter does not require a detailed explanation of the underlying facts, a brief summary of an otherwise technically complicated suit will suffice.

This dispute arises out of Defendants' uranium mining activity on two tracts of land, one owned by Plaintiffs Sara Trautmann and SABT Ranch, and the other owned by the remaining Plaintiffs who are parties to this suit as Intervenors. [Dkt. No. 87 at 10]. To extract the valuable uranium from the underground aquifers in which it is naturally deposited, Cogema engaged in a form of mining termed "in-situ leaching," by which various chemicals in liquid form, many of

them toxic, are injected into the production aquifer in order to separate the uranium molecules from other undesired substances. [Joe Zupan Dep. 100-01, Dkt. No. 39-1, Jan. 5, 2005]. This process naturally leads to an increase in the concentration of contaminants, such as selenium, in the production aquifer. *Id.* This contamination is usually remedied via a restoration process after the production aquifer is depleted of uranium. *Id.* Plaintiffs allege that Defendants: (1) failed to adequately restore Plaintiffs' underground water aquifers upon cessation of mining activities, as required under the Lease; (2) that Defendants, in their operations, negligently contaminated the soil of Plaintiffs' respective surface estates; and (3) that Defendants' failure to promptly vacate Plaintiffs' property upon cessation of mining activities amounts to trespass. [Dkt. No. 87].

On September 5, 2006, this Court granted in part and denied in part Defendants' Motion for Summary Judgment. [Dkt. No. 90]. On November 20, 2006, Defendants filed the Motion for Reconsideration now before the Court, arguing: (1) that the Court failed to recognize that, since Defendants' Motion was a "no evidence" motion, Plaintiffs bore the initial summary judgment burden of presenting genuine fact issues; (2) that the Court erred in concluding that genuine fact issues existed as to Plaintiffs' damages; (3) that the Court erred in concluding that Defendants owed Plaintiffs a duty of care in operating on Plaintiffs' land; (4) that the Court erred in concluding that Plaintiffs' negligence claim did not sound in breach of contract by virtue of the common duties allegedly violated, and the common injuries allegedly suffered; and (5) that the Court erred in concluding that a genuine fact issue existed as to whether Defendants are liable for trespass. [Dkt. No. 104].

## II.     DISCUSSION

Although Defendants fail to expressly invoke the provision governing motions for reconsideration, such are generally considered cognizable under either Federal Rule of Civil Procedure 59(e), as motions "to alter or amend judgment," or under Rule 60(b), as motions for "relief from judgment." *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 173 (5th Cir. 1990). "Under which Rule the motion falls turns on the time at which the motion is served . . . If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after that time, it falls under Rule 60(b)." *Id.* Because Defendants filed their Motion for Reconsideration more than ten weeks after the Court's disposition of their Motion for Summary Judgment, Rule 60(b) governs the instant matter.

Rule 60(b) presents a high hurdle to clear, as is evidenced upon a comparison with its sister provision, Rule 59(e). Presumably because a motion filed under Rule 59(e) is filed relatively early, the substantive burden it presents is generally considered more lenient than that imposed by Rule 60(b). *Id.* at 173. Nevertheless, a Rule 59(e) motion will be granted only to correct "manifest errors of law or fact or to present newly discovered evidence." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *see also Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989). If a movant must show "manifest error" under Rule 59(e), a fairly high threshold, then under Rule 60(b), which presents more "exacting substantive requirements," *Lavespere*, 910 F.2d at 167, the movant must demonstrate error on the part of the Court which, if left uncorrected, will result in "manifest *injustice*," *Id.* at 173 (interpreting Rule 60(b) (emphasis added)).

### A.  Summary Judgment Burden Shifting

The Court's first alleged error was a procedural one: the Court allegedly failed to recognize that since Defendants' Motion was a "no evidence" motion, the summary judgment burden of demonstrating genuine fact issues was immediately borne by Plaintiffs. [Dkt. No. 104 at 3].

Defendants confuse federal and state practice. "No evidence" motions for summary judgment are cognizable only in Texas state courts.[1] *See Cardner v. Home Depot U.S.A., Inc.*, 2006 U.S. Dist. Lexis 17753, 4-5 (E.D. Tex. 2006) ("A no evidence motion for summary judgment is only available in the Texas state courts . . . . Accordingly, the court will apply the appropriate federal standard to the [d]efendant's motion for summary judgment."); *Royal Surplus Lines Ins. Co. v. Brownsville Indep. Sch. Dist.*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in . . . federal summary judgment procedure."); *Goldberg v. Craig (In re Hydro-Action, Inc.)*, 341 B.R. 186, 194 (Bankr. E.D. Tex. 2006) ("While federal law clearly contemplates summary judgment in circumstances where there is truly no evidence of an essential element . . . the party moving for summary judgment must make some showing that evidence on an essential point is wholly lacking . . . ."). To be sure, some district courts, without addressing the issue head-on, have seemingly assumed that this creature of state procedure may be invoked in the federal courts. *See*, *e.g.*, *Shaw v. Broadcast.com, Inc.*, 2005 U.S. Dist. Lexis 18715 (N.D. Tex. 2005); *DIRECTV, Inc. v. Bush*, 2003 U.S. Dist. Lexis 24557 (S.D. Tex. 2003). However, most of these decisions reflect a willingness not to alter the substantive summary judgment inquiry, but merely to momentarily entertain the state pleading vernacular initially

---

[1] "After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial . . . . The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact." TEX. R. CIV. P. 166a(i).

injected into the proceedings by way of a party's mistitled motion. *See*, *e.g.*, *AT&T Corp. v. Network Communs. Int'l Corp.*, 2006 U.S. Dist. Lexis 58035 (E.D. Tex. 2006) ("[I]n the case of a no-evidence motion for summary judgment, once the moving party has made an initial *showing* that there is no evidence to support the nonmoving party's claims, the party opposing the motion must assert competent summary judgment evidence . . . ." (emphasis added)); *Lopez v. Lone Star Beef Processors, L.P.*, 2004 U.S. Dist. Lexis 20397 (E.D. Tex. 2004) (Premising its explanation of how the "no evidence" standard operates in federal court on the federal summary judgment standard as articulated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Although the courts that have specifically discussed whether "no evidence" motions are cognizable in federal court have answered in the negative, to the extent that the above citations represent a "split" on the issue, it is an inescapable deduction of controlling case law that strict adherence to the federal standard, and only the federal standard, is the correct approach.

First, it cannot be argued that federal summary judgment analysis and Texas' "no evidence" standard are "roughly the same" as to make them interchangeable. Under Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment with respect to a given claim if (1) they can show the absence of a genuine issue of material fact on an essential element of that claim; and (2) that they are entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In fleshing out the meaning of these two prongs, the Supreme Court, in its seminal *Celotex* opinion, made clear that the movant "bears the initial responsibility of informing the district court of the basis for its motion, and *identifying those portions of the [record]* which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (emphasis added); *see also id.* at 328 (White, J., concurring) ("[I]t is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that

the plaintiff has no evidence to prove his case."). Indeed, the Fifth Circuit has summarized the Supreme Court's contemporary summary judgment jurisprudence to mean that:

> before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial.
>
> . . .
>
> This initial burden remains with the moving party even when the issue involved is one on which the non-movant will bear the burden of proof at trial. *Contrary to the defendant's assertions, the Court in Celotex did not hold that any time a party with the burden of proof at trial is faced with a motion for summary judgment it must come forward with competent evidence to support its theory of liability, regardless of what showing the movant has made*.

*Russ v. International Paper Co.*, 943 F.2d 589, 592 (5th Cir. 1991) (emphasis added).

Having established that the federal and state standards are substantively distinct, it cannot next be argued that the federal courts are required to apply state summary judgment law *in place of* the federal standard whenever a party invokes the former, as it is well settled per the "Erie doctrine" that "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also id.* at 428 n.7 (stating that for Erie purposes, "[i]t is settled that if the [Federal] Rule on point is consonant with the Rules Enabling Act and the Constitution, the Federal Rule applies [*i.e.*, is 'procedural'] regardless of contrary state law."); *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Every v. Makita U.S.A.*, Inc., 2005 U.S. Dist. Lexis 24881 (S.D.N.Y. 2005) (stating that, pursuant to the Erie doctrine, "Michigan's [summary judgment standard] does not govern summary judgment procedures in this Court."); *Williams v. J.P. Morgan & Co.*, 199 F. Supp. 2d 189, 191 (S.D.N.Y. 2002), *vacated on other grounds by Williams v. J.P. Morgan & Co.*, 2004 U.S. Dist. Lexis 22721 (S.D.N.Y. 2004), ("In matters of 'procedure' . . . federal courts must apply federal law . . . . As such, a court reviews a motion for summary judgment under the federal standard of

review."); *Baker v. Philip Morris, Inc.*, 1999 U.S. Dist. Lexis 16687 (S.D. Cal. 1999) ("Because a motion for summary judgment is a procedural device, . . . in the instant case the Court applies the federal standard for summary judgment."). Thus, the federal and state standards cannot remain equally available to movants in federal court without obvious and impermissible tension with well-settled law.

Therefore, Defendants' assertion that, merely upon alleging "no evidence," the burden shifted to Plaintiffs to establish genuine fact issues as to each element of their claims is simply wrong.

### B.  Genuine Fact Issue: Damages

Even assuming that the evidentiary burden shifted to Plaintiffs as proposed by Defendants, the argument that Plaintiffs failed to demonstrate genuine issues of material fact as to breach of contract and negligence damages is incorrect.

Defendants begin by delving into Texas remedies law, emphasizing the difference between "permanent" and "temporary" injuries to land, and the corresponding differences in recovery. [Dkt. No. 104 at 3]. According to Defendants, in alleging wrongful contamination to their aquifers and soil, "[i]t is undisputed that Plaintiffs and Intervenors claim permanent injury to their properties." [Dkt. No. 104 at 3]. As such, Plaintiffs were allegedly required to submit specific evidence of "the difference in the value of their property before and after the injury." [Dkt. No. 104 at 4-5]. In other words, according to Defendants, Plaintiffs were obliged to quantify their damages using the specific recovery rubric corresponding to "permanent" land injury under Texas law. Because they failed to point to such evidence, Defendants were, as they argue, entitled to judgment as a matter of law. [Dkt. No. 104 at 3-4].

In Texas, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the

defendant; and (4) damages to the plaintiff resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003). Similarly, "the elements of a negligence cause of action are [1] the existence of a legal duty; [2] a breach of that duty; and [3] damages proximately caused by the breach." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540-41 (5th Cir. 2005); *IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). Thus, Defendants are correct that a plaintiff, in order to adequately counter the movant's initial showing, must demonstrate a genuine fact issue as to breach of contract and tort "damages." Nevertheless, Defendants misunderstand what this means.

Defendants cite no authority for the proposition that, in order to show a genuine issue as to damages for either breach of contract or negligence, a plaintiff must provide evidence *quantifying* damages. With regard to contract breach, the case law—even *Lewis*, upon which Defendants rely—requires only that the plaintiff demonstrate a genuine fact issue as to *injury*. That is, in stating that a plaintiff must show "damages to the plaintiff resulting from the breach," the *Lewis* court was stating a *causation* requirement, and employed the term "damages" only to explain that the alleged economic injury must *result* from breach. *Lewis*, 343 F.3d at 545 ("Because a causal link to economic damages is a requisite element of an action for breach of contract, the district court erred by submitting [the plaintiff's] contract claim to the jury."). Similarly, for a negligence claim to survive summary judgment, there must be a genuine fact issue as to whether a plaintiff's "damages [were] proximately caused by the breach." *IHS Cedars*, 143 S.W.3d at 798. That this requirement states a causation requirement, rather than a quantification of damages requirement, is obvious upon a plain reading of the Texas Supreme Court's own words.[2] *See id.*

---

[2] The Court recently struck several of Plaintiffs' expert witnesses as untimely designated. [Dkt. Nos. 88, 100]. Defendants argue that, to the extent the Court's previous denial of summary judgment was based on the now stricken

Thus, for reasons already stated, Defendants err in concluding that the distinction between temporary and permanent injury to land is relevant for summary judgment purposes. Nevertheless, even if this argument would have compelled a judgment in Defendants' favor had it been timely advanced, it cannot serve as a basis for relief by way of a motion for reconsideration, as such a motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004); *see also Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990).

### C. Defendants' Duty of Care

To recover for negligence, a plaintiff must establish that the defendant owed some duty of care to the plaintiff, and that the defendant breached that duty. *Phillips*, 801 S.W.2d at 525. Defendants argue that the Court erroneously concluded that they owed Plaintiffs the implied duty to operate on the respective properties as "reasonably prudent operators." [Dkt. No. 90 at 10]. According to Defendants, this duty is implied in every Texas oil and gas lease only "[i]n the absence of express [Lease] provisions to the contrary." [Dkt. No. 104 at 5]. Overriding express provisions allegedly exist in the uranium mining Lease—provisions that bound Defendants to take specific restorative measures upon cessation of mining activities, such as the planting of grass seed. [Dkt. No. 104 at 7-13]. Since these provisions establish a few specific restorative obligations, they allegedly override any default duty of Defendants to operate on Plaintiffs' land with reasonable care, generally.

---

expert affidavits, the Court's decision should be revisited. [Dkt. No. 104 at 4]. First, such is not an argument of court error, but rather an insistence that the Court retroactively evaluate Defendants' Motion for Summary Judgment in light of the record as it stands now. Even if this were appropriate, it would not alter the outcome. Defendants attack the consideration of the expert affidavits insofar as those affidavits help to quantify Plaintiffs' damages. Thus, even if the Court's reference to the now-stricken affidavits was somehow erroneous, the Court's use of that evidence would not be a basis for granting Defendants' Motion for Reconsideration, since the Court has already concluded that Plaintiffs were not obliged to quantify their damages at the summary judgment phase.

Defendants are correct that express lease provisions can "read out" implied oil and gas covenants. *See Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). However, this principle lends Defendants no favor here. Defendants rely on the Texas Supreme Court's decision in *Yzaguirre v. Kcs. Res.*, 53 S.W.3d 368 (Tex. 2001), where the court refused to read into an oil and gas lease the implied convent to obtain for the lessor the "best price available" (assuming that such an implied covenant exists) for oil produced. *Id.* at 374. The basis for that decision was a lease clause directly and unequivocally negating this implied covenant: it provided that the lessor's royalty was to be based on the *market value* of the oil sold. *Id.* at 374. Thus, "[b]ecause the lease provide[d] an objective [overriding] basis for calculating royalties, . . . the lessor d[id] not need the protection of an implied covenant." *Id.*

By contrast, Defendants fail to invoke any Lease language negating their default duty to *operate* on Plaintiffs' land as reasonably prudent operators. Rather, they point only to provisions representing their agreement to perform specific restorative acts upon cessation of mining activities, such as re-seeding, plowing, and the plugging of abandoned well holes. [Dkt. No. 104 at 8]. Unlike in *Yzaguirre*, reading the instant contract to preserve this implied covenant is not tantamount to "rewrit[ing] th[e] [L]ease's plain terms to give [Plaintiffs] the benefit of a bargain they never made." *Id.* at 374. Indeed, to agree with Defendants would be to conclude that, in demanding a provision mandating re-seeding, Plaintiffs "bargained" to allow Defendants to operate, in all other respects, with a degree of care below that which is reasonable. This proposition fails the "straight-face test."

### D. Plaintiffs' "Negligence" Claim: Sounding in Tort or Contract?

Defendants next argue that because the allegations constituting Plaintiffs' breach of contract claim are common to those serving as the basis of their negligence claim, the latter is subsumed

into the former and, under the Texas Supreme Court's decision in *Southwestern Bell Tel. Co. v. Delanney*, 809 S.W.2d 493 (Tex. 1991), Plaintiffs' negligence claim cannot proceed independently. [Dkt. No. 104 at 12-13].

First, because Defendants did not raise this argument in its Motion for Summary Judgment, it is foreclosed. *See Templet*, 367 F.3d at 478-79. Second, Defendants simply misapply the very case law they invoke. *Delanney* stands for the proposition that if the conduct in question would not be actionable were it not for the existence of a contract, such conduct cannot serve as the basis for a negligence claim. However, "[i]f the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort." *Id.* at 494. Thus, for example, when X breaches his implied contractual duty to repair Y's water heater with reasonable skill and, as a result of that breach, the water heater catches fire, destroying Y's house, X not only denies Y the benefit of the contract bargain (a functional water heater) but also breaches his common-law duty to use reasonable care so as to not harm Y's other legally recognized interests. *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153 (1947). As such, if Defendants caused damages to Plaintiffs beyond merely denying them the "benefit of their bargain," that breach gives rise to a tort claim as well as a contract claim.

As this Court noted in its September 5, 2006 Opinion denying summary judgment as to negligence,:

> Plaintiffs [have] provided documents evidencing numerous spills of thousands of gallons of "barren lixiviant" on Plaintiffs' Property, a highly contaminated solution used in the in-situ leach process. *See*, *e.g.*, [Ex. A-6]. Further, Plaintiffs have provided the Court with documents from the U.S. Nuclear Regulatory Commission showing that at least one of the spills was the result of Cogema's improper use of a 90-degree "tee" in the pipe line used to transport barren lixiviant to and from Cogema's on-site plant to the various El Mesquite wells.

11

> Also included is documentary evidence of "excursions," defined by an expert as "events in which unacceptably high concentrations of toxic constituents are detected in . . . monitoring wells, indicating that toxic constituents are mobile and no longer under the operator's control." [Zupan Aff., Ex. A at 9]. According to the Director of the Waste Management Division of the Office of Nuclear Material Safety and Safeguards, such excursions are "generally preventable since they are often manifested by structural weaknesses induced by *improper well construction*." [Ex. A-2 at 2] (emphasis added). The Director further found that "licensees should avoid piping configurations similar to the 90-degree bend" employed by Cogema. [Ex. A-2 at 2].

[Dkt. No. 90 at 10-11]. The evidence in the record suggests that Plaintiffs' land was contaminated with radioactive waste to a degree that implicates basic common-law duties of care. As such, Plaintiffs' negligence claim can proceed independent of their contract claim.

### E. Plaintiffs' Trespass Claim

Defendants lastly argue that the Court erred in finding a genuine fact issue as to Plaintiffs' trespass claim. [Dkt. No. 104 at 13].

First, Defendants spend considerable ink arguing that they are proceeding "diligently with the restoration of Plaintiffs' land," and therefore their continued presence thereon is not actionable. [Dkt. No. 104 at 15]. This of course is an argument on the merits: the thrust of Plaintiffs' trespass claim is that Defendants have failed to complete demolition of its on-site facilities and remove trash and debris from their land "within a reasonable length of time." [Dkt. No. 74 at 6, 12]; *see also* [Dkt. No. 90 at 12 "An example of trespass is when a defendant fails to remove objects from the plaintiff's property in violation of a duty to do so." (citing *Allen v. Virginia Hill Water Sup. Corp.*, 609 S.W.2d 633, 635 (Tex. App.—Tyler 1980, no pet.))]. Thus, whether Defendants are indeed being "diligent" in vacating Plaintiffs' property informs whether the duration of their presence has exceeded their right to remain on Plaintiffs' land post-mining for the purposes of restoration and clean-up. This is a fact issue for the jury.

Defendants also argue that Plaintiffs failed to present evidence of damages arising out of Defendants' alleged trespass. [Dkt. No. 104 at 14]. However, as is the case regarding negligence and breach of contract claims, a plaintiff claiming trespass need not provide specific evidence quantifying damages in order to survive summary judgment. Rather, a plaintiff need only present a genuine fact issue as to whether the defendant's entry caused injury to the plaintiff's right of possession. *Argonaut Sw. Ins. Co. v. Naupin*, 500 S.W.2d 633, 635 (Tex. 1973). Since Defendants do not dispute Plaintiffs' allegation that they remain on Plaintiffs' property to date, such would obviously amount to an injury of Plaintiffs' right of possession—that is, the classic property right of exclusion—if Plaintiffs are able to prove the remaining elements of trespass.

### III.   CONCLUSION

Defendants fail to point to any error in the Court's previous Opinion disposing of their Motion for Summary Judgment. This failure obviously precludes their ability to show "manifest injustice" arising from error. Accordingly, Defendants' Motion for Reconsideration, [Dkt. No. 104], is **DENIED**.

IT IS SO ORDERED.

Done this 30th day of May, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**